UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEATHER BORDER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL REAL ESTATE ADVISORS, )<br>LLC, )<br>)<br>Defendant. )<br>) | Civil Case No. 19-974 |

## MEMORANDUM OPINION

Plaintiff Heather Border brings this action against her former employer, defendant National Real Estate Advisors, LLC ("National"), alleging unlawful discrimination, harassment, and retaliation on the basis of sex and disability, stemming from her two high-risk pregnancies in 2017 and 2018. She argues that defendant's actions—which culminated in her demotion and termination—were motivated by plaintiff's use of protected pregnancy and family leave. She seeks monetary damages under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Pregnancy Discrimination Act, 42 U.S.C. § 2000e *et seq.* ("PDA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA"); the D.C. Family and Medical Leave Act, D.C. Code § 32-501 *et seq.* ("DCFMLA"); and the Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231.01 *et seq.* ("PPWFA").

For its part, defendant argues that its actions were motivated by plaintiff's poor management style, declining performance, and the need to refocus defendant's capital raising

1

efforts. Defendant seeks to dismiss portions of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), including (1) Counts III and IV because plaintiff is not an "eligible employee" covered by the DCFMLA; (2) Count V because plaintiff fails to meet the requirements to qualify for coverage under the PPWFA; (3) Count XIV because plaintiff is not disabled as defined by the ADA; (4) Counts VI, IX, XI, XII, XIV, XV, and XVII to the extent that they are based on allegations not asserted in plaintiff's July 20, 2018, Charge of Discrimination because she did not exhaust her administrative remedies as to these claims; and (5) Counts XII, XIII, XIV, XV, XVI, and XVII because the allegations are not sufficiently severe or pervasive to meet an essential element of a hostile work environment claim. For the reasons that follow, the Court will grant in part and deny in part defendant's partial motion to dismiss.

## **Legal Standard**

A party may move to dismiss a case under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To move her case past a Rule 12(b)(6) motion to dismiss, plaintiff's complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that her complaint raises "more than a sheer possibility that [National] has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating defendant's Rule 12(b)(6) motion, the Court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But the Court cannot accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as true. *Iqbal*, 556 U.S. at 678. The Court

may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## **Counts III and IV**

Plaintiff argues in Counts III and IV of her amended complaint that she satisfied all the requirements of the DCFMLA for sixteen weeks of continuous or intermittent paid family and medical leave at all relevant times during her employment with National. *See* Am. Compl. ¶¶ 203–31, ECF No. 12. She claims that National unlawfully interfered with her DCFMLA rights and retaliated against her for exercising those rights and for complaining to the District of Columbia Office of Human Rights ("DCOHR"). *Id.* ¶¶ 213, 228. Plaintiff alleges that her supervisor, Jeffrey Kanne, discouraged her from going on leave by telling her that doing so would negatively affect her career. *Id.* ¶ 213. According to plaintiff, Mr. Kanne continued to interfere with her paid leave rights and retaliated against her by denying her full compensation, demoting her, and eventually terminating her. *Id.* ¶ 228.

Defendant argues that plaintiff is not an eligible employee under the DCFMLA because she did not spend more than 50% of her working time in the District of Columbia. Def.'s Mot. Dismiss 6, ECF No. 14-1. DCOHR regulations state that an eligible employee for purposes of the DCFMLA is "an individual who works within the District, as described in subsection 1603.5." D.C. Mun. Regs., tit. 4, § 1603.1 (2019). Subsection 1603.5 states:

> An employee shall be deemed to work within the District if the person spends more than fifty percent (50%) of his or her work-time working for the employer in the District, if the person is employed by the employer in more than one (1) location, or the employee is based in the District of Columbia and regularly spends a substantial part of his or her time working for the employer in the District of Columbia and does not spend more than fifty percent (50%) of his or her work-time working for the employer in any particular state.

3

*Id.* § 1603.5. Because plaintiff concedes that she spent most of her work-time working remotely from Florida,[1] *see* Am. Compl. ¶¶ 10, 32, defendant moves to dismiss Counts III and IV pursuant to Rule 12(b)(6) for failing to satisfy every element of a DCFMLA claim. Def.'s Mot. Dismiss 6.

Plaintiff argues that she is an eligible employee because the DCFMLA has not provided guidance on dealing with remote employees and that it should be read to include her based on case law interpreting the FMLA. *See* Pl.'s Mem. Opp. Mot. Dismiss 6, ECF No. 17. She claims that the text of Subsection 1603.5 supports her interpretation because it does not explicitly state that employees must be "physically" working in D.C. *See id.* at 7. At worst, she argues, Subsection 1603.5 is ambiguous, so the Court should read it broadly and extend the DCFMLA's protective purpose to remote workers whose supervisors and co-workers are physically located in D.C. *See id.* at 8.

Contrary to plaintiff's contention that this is a case of first impression, *see id.* at 6, the court in *Hopkins v. Grant Thornton International*, 851 F. Supp. 2d 146 (D.D.C. 2012), *aff'd sub nom.*, *Hopkins v. Grant Thornton, LLP*, 529 F. App'x 1 (D.C. Cir. 2013), dealt with the same issue. The plaintiff in *Hopkins* worked for the defendant's Alexandria, Virginia office and in Iraq as well. *Id.* at 156–57. He spent less than 30% of his work-time in D.C. *Id.* at 157. Even though he worked in D.C. for "periods of time," Judge Collyer held that "[t]his hardly qualifies him as an employee in the District of Columbia." *Id.* The D.C. Circuit affirmed Judge Collyer's dismissal of his DCFMLA claims. *Hopkins v. Grant Thornton, LLP*, 529 F. App'x 1, 3 (D.C. Cir. 2013)

The Court agrees with the holding in *Hopkins* and declines to add an exception for remote workers like Ms. Border. The text of Subsection 1603.5 leaves no room for ambiguity regarding remote workers—either employees spend more than 50% their work-time in D.C. or they do not.

---

[1] Plaintiff periodically traveled to D.C. as part of her employment with National, *see* Am. Compl. ¶ 40, but she spent the majority of her work-time in Florida.

Plaintiff spent the majority of her work-time in Florida, so she is not an eligible employee under the DCFMLA. This holding applies to plaintiff's retaliation claim as well.[2] Accordingly, the Court **GRANTS** defendant's motion to dismiss Counts III and IV pursuant to Rule 12(b)(6).

### Count V

Defendant seeks to dismiss Count V for similar reasons: because plaintiff spent the majority of her work-time in Florida, the PPWFA should not cover her.[3] But the PPWFA is different because it does not restrict its coverage to eligible employees in the same way that the DCFMLA does. Still, defendant seeks to dismiss Count V because other recently enacted D.C. statutes (including the DCFMLA, the Universal Paid Leave Amendment Act of 2016, and the D.C. Minimum Wage Revision Act) require that employees spend the majority of their work-time in D.C. to be covered. Def.'s Mot Dismiss 10. But with no clear authority instructing the Court to read the PPWFA in a way that effectively promulgates a regulation resembling Subsection 1603.5 of the DCFMLA,[4] the Court declines to do so.

But defendant also argues that the Court should dismiss Count V because of the presumption against extraterritorial application of statutes. Def.'s Reply 6, ECF No. 18. At the

---

[2] Plaintiff argues that her DCFMLA retaliation claim should not be dismissed even if the Court holds that Subsection 1603.5 excludes remote workers because the DCFMLA prohibits retaliation against "any person" (rather than "an eligible employee"). Pl.'s Mem. Opp. Mot. Dismiss 9–10 (citing D.C. Mun. Regs., tit. 4, § 1621.2). But the Court notes that the DCFMLA's prohibition against interference uses the terms "any person" and "employee" interchangeably, *see* D.C. Mun. Regs., tit. 4, § 1621.1, so the Court does not read the retaliation prohibition to be an exception to the rule set forth in Subsection 1603.5. Furthermore, Judge Collyer also dismissed the DCFMLA retaliation claim in *Hopkins*. 851 F. Supp. 2d at 157.

[3] The PPWFA requires D.C. employers to, among other things, provide reasonable accommodations for employees who are limited by pregnancy, childbirth, related medical conditions, or breastfeeding. *See* D.C. Code § 32-1231.03.

[4] Defendant cites to two D.C. cases interpreting the reach of D.C. minimum wage and workers' compensation laws. Def.'s Mot. Dismiss 10 (citing *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258 (D.C. Cir. 1972); *Hughes v. Dist. of Columbia Dep't of Emp't Servs.*, 498 A.2d 567 (D.C. 1985)). But those cases do not contemplate D.C. anti-discrimination laws and were decided well before remote working became prevalent. Instead, the Court will rely on the reasoning of *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301 (D.C. 2009) (extending the DCHRA's reach to a remote worker outside of D.C.) to determine whether the PPWFA covers remote workers like Ms. Border because the case was more recently decided and it contemplates the reach of a D.C. anti-discrimination statute.

federal level, the presumption is "that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application." *Small v. United States*, 544 U.S. 385, 388 (2005). But some federal courts have applied this presumption to state antidiscrimination statutes by declining to extend their reach to nonresidents of that state. *See, e.g., Hamade v. Valiant Gov't Servs., LLC*, No. 5:18-CV-166-TBR, 2019 U.S. Dist. LEXIS 52868, at *12-13 (W.D. Ky. Mar. 28, 2019); *Blackman v. Lincoln Nat'l Corp.*, No. 10-6946, 2012 U.S. Dist. LEXIS 175021, at *8 (E.D. Pa. Dec. 10, 2012); *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008). Defendant argues that the PPWFA must contain clear language of extraterritorial application to overcome this presumption, but it does not. Def.'s Reply 6–7 (citing *Blackman*, 2012 U.S. Dist. LEXIS 175021, at *8; *Taylor v. Rodale, Inc.*, No. 04-799, 2004 U.S. Dist. LEXIS 10078, at *6–7 (E.D. Pa. May 27, 2004)).

In response, plaintiff points out that defendant cites to mostly unpublished, out-of-state cases and makes no mention of *Kambala v. Checchi & Company Consulting, Inc.*, Pl.'s Surreply 2, ECF No. 24, which was decided in this district and extended the reach of the DCHRA to an employee of a D.C. company who worked in Mali. 280 F. Supp. 3d 131, 140 (D.D.C. 2017). In *Kambala*, Judge Mehta relied heavily on the D.C. Court of Appeals' reasoning in *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301 (D.C. 2009), in reaching his decision:

> A discrimination claim can arise under the DCHRA when *either* the discriminatory employment decision was made in the District of Columbia *or* the effects of that discriminatory decision were felt in the in the District. *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301, 304–05 (D.C. 2009). In *Monteilh*, the D.C. Court of Appeals considered whether a plaintiff who lived and worked outside of the District could bring a DCHRA claim against his District of Columbia-based employer. *Id.* at 301–02. The plaintiff "never performed any work, nor applied for any position, within the District of Columbia." *Id.* at 302. Yet, the court in *Monteilh* concluded that the plaintiff's claim fell within the scope of the DCHRA because his employer "ha[d] made a discriminatory decision in the District of Columbia, although the effects have been felt elsewhere." *Id.* at 304. The court explained that this interpretation of the DCHRA "is most faithful to the statutory language and purpose." *Id.* The

court observed that the statute's text announces a "broad prohibition" against discriminatory acts by employers and that the D.C. Council's intent in passing the statute was to eliminate discrimination in the District of Columbia. *Id.* "The gravamen of the statutory proscription is discrimination as defined; the happenstance of where the conduct works its consequences was not reasonably meant by the Council to be 'the critical factual issue.'" *Id.* (citation omitted). Thus, the court held that although merely alleging that an employer is headquartered in the District of Columbia or has offices here would not be enough to implicate the DCHRA, the DCHRA's protections apply so long as the alleged discriminatory decision is made in the District of Columbia, or its effects are felt here, or both. *Id.* at 305.

*Kambala*, 280 F. Supp. 3d at 138 (emphasis in original).

Absent a statutory or regulatory directive to exclude remote workers whose employers are located in D.C., such as Subsection 1603.5 of the DCFMLA, the Court looks to *Monteilh* for guidance regarding the reach of the PPWFA as well. Construing the factual allegations in plaintiff's favor, the amended complaint makes clear that the alleged discriminatory decisions were made in D.C. *See* Am. Compl. ¶¶ 3, 88, 90, 159, 162. Following the reasoning of *Monteilh*—that the DCHRA's protections apply if the alleged discriminatory decisions were made in D.C.—and of *Kambala* in applying it, the Court holds that the presumption against extraterritorial application of statutes does not prevent plaintiff from bringing her PPWFA claim.

Plaintiff states a claim under the PPWFA, so the Court **DENIES** defendant's motion to dismiss Count V pursuant to Rule 12(b)(6).

### Count XIV

Defendant seeks to dismiss Count XIV, which alleges harassment based on disability under the ADA, because plaintiff's factual allegations cannot establish that she was disabled. Def.'s Mot. Dismiss 14. To prove her claim, plaintiff must demonstrate that "(1) [she] is a qualified individual with a disability . . . ; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently

7

severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [National] knew or should have known of the harassment and failed to take prompt effective remedial action." *Brown v. Small*, No. 02-cv-1268, 2005 U.S. Dist. LEXIS 5664, at *17 (D.D.C. March 31, 2005) (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). Defendant argues that plaintiff's high-risk pregnancy and resulting complications from her delivery do not rise to the level of a disability under the ADA.

Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Plaintiff must plead facts that, if true, establish (1) that she had a physical or mental impairment (2) that substantially limited (3) a major life activity. *Haynes v. Williams*, 392 F.3d 478, 481–82 (D.C. Cir. 2004). Congress amended the ADA in 2008 to expand its coverage and relax what it means to be disabled, *see* 42 U.S.C. § 12102(4), but plaintiff must still plead facts sufficient to show that she had a disability to survive a motion to dismiss. *See Dave v. Lanier*, 681 F. Supp. 2d 68, 74 (D.D.C. 2010).

Plaintiff alleges the following facts (related to her alleged disability) in her amended complaint:

> 346. Ms. Border suffered from a physical impairment related to pregnancy, including that she had a high-risk pregnancy and her baby experienced intrauterine growth restrictions during her third trimester, which substantially limited one or more major life activities including the ability to travel, lift, stand for long periods of time, carry her baby to term, give birth, and the functioning of her reproductive system.
>
> 347. Ms. Border delivered her son via cesarean section, which substantially limited one or more major life activity including the ability to walk, lift, user her abdominal muscles, and exercise.

Am. Compl. ¶¶ 346–47.

This Court has previously held that "[p]regnancy itself is generally not considered a disability." *Webster v. United States DOE*, 267 F. Supp. 3d 246, 266 (D.D.C. 2017). But a pregnancy that results in an impairment that substantially limits a major life activity can be considered a disability. *See id.* at 267. The Court agrees that "specific allegations about the limitation of a major life activity caused by a plaintiff's impairment are not required to survive a motion to dismiss," *Boykin v. Gray*, 895 F. Supp. 2d 199, 216 (D.D.C. 2012), but plaintiff's factual allegations must still establish a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570. Defendant argues that she has failed to do so because plaintiff's allegations are vague and conclusory. Def.'s Mot. Dismiss 17. Defendant points to the absence of detailed allegations in the amended complaint linking her high-risk pregnancy to a physiological disorder that substantially limited her ability to travel, lift, and stand for long periods of time. *Id.* at 15–16. Defendant also notes that the amended complaint fails to allege how long her impairments lasted. *Id.* at 16.

Although plaintiff's amended complaint does not specify how long her high-risk pregnancy and subsequent delivery substantially limited major life activities and failed state as many "specific allegations" as defendant claims is required, *see Boykin*, 895 F. Supp. 2d at 216, the Court must construe the factual allegations in her favor and grant her the benefit of all reasonable inferences that can be derived from the facts alleged. In doing so, the Court holds that the ADA claim is plausible on its face and states a claim for which relief could be granted.[5]

Accordingly, the Court **DENIES** defendant's motion to dismiss Count XIV pursuant to Rule 12(b)(6).

---

[5] The Court will be better equipped to resolve this issue once discovery is concluded. For now, the Court is satisfied with plaintiff's factual allegations.

## Counts VI, IX, XI, XII, XIV, XV, and XVII

Defendant seeks to dismiss Counts VI, IX, XI, XII, XIV, XV, and XVII to the extent that they are based on allegations not asserted in plaintiff's July 20, 2018, Charge of Discrimination because she did not exhaust her administrative remedies as to these claims. Def.'s Mot. Dismiss 11. Plaintiff alleges that after she filed her First Charge in July 2018, she properly filed a Second Charge in November 2018 with the Equal Employment Opportunity Commission ("EEOC"), and the Second Charge was treated as an amendment to the First Charge. Pl.'s Mem. Opp. Mot. Dismiss 15. Defendant contends that plaintiff improperly amended her First Charge and, in doing so, deprived not only National of proper notice but also EEOC of the opportunity to investigate the new claims. Def.'s Mot. Dismiss 13.

The timing of the filing of her Second Charge matters because plaintiffs must exhaust their administrative remedies with the EEOC before bringing any Title VII or ADA claims. *See* 42 U.S.C. § 12117(a); *Park v. Howard Univ.*, 71 F.3d 904, 907–09 (D.C. Cir. 1995). Once a charge has been pending before the EEOC for 180 days and the EEOC has not filed a civil action or reached a conciliation agreement on the charge, the EEOC must notify the complainant of his or her right to file a civil action. 42 U.S.C. § 2000e-5(f)(1). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (internal quotation marks omitted) (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)).

But plaintiff's filing of her Second Charge less than 180 days before the EEOC issued its February 2019 Right to Sue Notice does not automatically resolve this issue in favor of defendant.

Under certain circumstances, EEOC regulations permit a claimant to amend an original charge, and that amendment dates back to the filing of the original charge:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be deferred.

29 C.F.R. § 1601.12(b). Even in some cases where a plaintiff does not file an amendment for retaliation claims, if those claims are "'of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature,' a plaintiff's failure to separately exhaust his or her administrative remedies will not serve as a bar to suit, as those claims would have come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint." *Jones v. Bernanke*, 685 F. Supp. 2d 31, 37 (D.D.C. 2010) (quoting *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 137 (D.D.C. 2009)).

Defendant argues that plaintiff's Second Charge was not properly filed as an amendment. Def.'s Mot. Dismiss 12. This is a factual challenge to defendant's assertion that it was, but the truth of this assertion directly affects whether plaintiff exhausted her claims. Although plaintiff's factual allegations should be construed in her favor, the Court may examine the documents in question (the First and Second Charges, as well as the February 2019 Right to Sue Notice) to determine whether they contradict her allegations without converting the standard of review to that of a motion for summary judgment. *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)). Here, the Second Charge does not contradict plaintiff's contention that it was properly

filed as an amendment to the First Charge. If anything, the fact that the Second Charge shares the original Charge Number (570-2018-02951) with the First Charge and the February 2019 Right to Sue Notice supports plaintiff's contention. *See* July 2018 Charge, ECF No. 14-3; November 2018 Charge, ECF No. 17-1; Notice of Right to Sue, ECF No. 14-3. The documents do not persuade the Court that it should reject plaintiff's assertion that she properly amended her First Charge, so the Court treats it as true.[6]

Although the Court finds that the attached documents do not contradict plaintiff's assertion, the question of whether the new allegations in the Second Charge are sufficiently like or related to the allegations in the First Charge remains. This must be the case if the Court is to treat the Second Charge as an amendment that dates back to the First Charge. *See* 29 C.F.R. § 1601.12(b). Defendant argues that the claims of discrimination and retaliation in the Second Charge bear no logical relationship to the claims in the First Charge. Def.'s Reply 9. Defendant further states that the two Charges contain factually dissimilar and separate acts and that the only commonality between them is that they all allegedly violate either Title VII or other equal employment laws. *Id.* at 10. The Court disagrees.

Plaintiff's allegations in the First Charge state that she was experiencing "ongoing" retaliation and that she expected Mr. Kanne would continue to discriminate and retaliate against her in the future. July 2018 Charge ¶¶ 22–23. The Second Charge, when construed in plaintiff's favor, demonstrates that plaintiff's suspicions were not unfounded. Mr. Kanne allegedly continued to retaliate and discriminate against plaintiff until she was demoted, denied payment, and eventually terminated. *See* November 2018 Charge. Taken together, and assuming their truth,

---

[6] The Court anticipates that defendant will have a better understanding of plaintiff's administrative filings once discovery concludes. *See* Def.'s Mot. Dismiss 12 (stating that defendant did not receive notice of the Second Charge when plaintiff filed it with the EEOC).

12

plaintiff's combined allegations describe a continuous and discriminatory effort to degrade and diminish plaintiff's ability to perform her job while she was dealing with tribulations of pregnancy and childbirth. Accordingly, the Court will treat the Second Charge as a properly filed amendment that grew out of the subject matter of the First Charge.[7]

Defendant's final challenge regarding the exhaustion of administrative remedies relates only to plaintiff's hostile work environment claims. Def.'s Reply 13. Defendant argues that plaintiff failed to exhaust her hostile work environment claims because plaintiff's First Charge did not explicitly mention a hostile work environment and allegedly raised only discrete, separate acts of discrimination and retaliation. *Id.* at 14.

But courts in this district do not require a plaintiff to allege a hostile work environment in an administrative complaint so long as the defendant has been put on notice of the facts underlying those claims. *See, e.g., Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 348 (D.D.C. 2013) ("[A] plaintiff need not use any magic words in a charge much less use the specific term 'hostile work environment' in order to properly exhaust such a claim."); *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 12 (D.D.C. 2011) ("[A] hostile work environment claim that is based on the same conduct alleged in the EEOC charge has been exhausted."); *Na'im v. Rice*, 577 F. Supp. 2d 361, 372 (D.D.C. 2008) (a "plaintiff need not specifically allege a hostile work environment claim" at the administrative level); *cf. Panarello v. Zinke*, 254 F. Supp. 3d 85, 102–03 (D.D.C. 2017) (dismissing hostile work environment claim because plaintiff did not put

---

[7] Defendant's reliance on *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), *see* Def.'s Reply 12–13, is misplaced. Although courts in this district have disagreed on the implications of *Morgan*, *see Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013), this Court has held that "[a]lthough *Morgan* bars recovery for, on its facts, discrete acts occurring before the statutory time period, *Morgan* has, on the whole, been understood to also bar discrete acts occurring after the time period, after the filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court." *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (citing cases). Still today, the Court is persuaded by its reading of *Morgan* and holds that plaintiff has exhausted her administrative remedies under that reading.

defendant on notice of facts underlying hostile work environment claim in administrative complaint); *Johnson v. Interstate Mgmt. Co.*, 962 F. Supp. 2d 244, 252–53 (D.D.C. 2013) (concluding that plaintiff failed to exhaust administrative remedies because charge form included no factual allegations to put the EEOC on notice of any hostile work environment claims). Here, plaintiff's hostile work environment claims are based on facts alleged in her First Charge, *see* Pl.'s Surreply 9-10, so plaintiff has properly exhausted her hostile work environments claims. *See Wade*, 780 F. Supp. 2d at 12.

Accordingly, the Court **DENIES** defendant's motion to dismiss these Counts pursuant to Rule 12(b)(6).

### Counts XII, XIII, XIV, XV, XVI, and XVII

Finally, defendant seeks to dismiss Counts XII, XIII, XIV, XV, XVI, and XVII because the allegations fail to meet an essential element of a hostile work environment claim.[8] To move her claims past defendant's motion to dismiss, plaintiff must allege that National subjected her to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)); *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 52 (D.D.C. 2015).

In evaluating plaintiff's allegations, the Court focuses on the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[The] standards for judging hostility are sufficiently demanding to ensure that Title

---

[8] The Court analyzes plaintiff's hostile work environment claims under the DCHRA and ADA (Counts XIII and XIV) under the same framework that it analyzes the Title VII hostile work environment claims. *See Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999); *Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship*, 518 F. Supp. 2d 179, 183 n.6 (D.D.C. 2007).

VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)). Defendant also notes that "casual or isolated manifestations of a discriminatory environment . . . may not raise a cause of action." *Bundy v. Jackson*, 641 F.2d 934, 943 n.9 (D.C. Cir. 1981).

Plaintiff summarized her factual allegations in her opposition to defendant's motion to dismiss as follows:

> Defendant demoted her, denied her compensation she had been promised, failed to award her bonuses she had earned, failed to respond to her communications, reprimanded her, disparaged her privately and in front of colleagues and co-workers, excluded her from internal and external meetings, prohibited her from client contact, stripped her of all meaningful duties, issued her a poor performance evaluation, and terminated her employment. *See* Am. Compl. ¶¶ 324, 335, 348, 360, 377, 392. These acts are part of the same actionable claim of harassment as they "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same manager[]." [*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 115 (2002)]. These acts were all based on the same protected characteristics, motivated by the same type of animus, and they were all perpetrated by Plaintiff's supervisor, Jeffrey Kanne. *See, e.g.*, Am. Compl. ¶¶ 82–83 (Mr. Kanne demoted Plaintiff and removed her team from her supervision because she took family and medical leave and was unable to travel due to pregnancy-related disabilities), 91–96 (Mr. Kanne replaced Plaintiff, in title and duties, with a male coworker who also worked remotely, because Plaintiff took family and medical leave), 116–117 (Mr. Kanne reprimanded Plaintiff for taking a break to pump breast milk and discouraged women in the office from breastfeeding)[.]

Pl.'s Mem. Opp. Mot. Dismiss 34–35. According to plaintiff, these events occurred regularly and within a fourteen-month timespan (between the time she went on maternity leave and her termination). *Id.* at 35.

Defendant argues that plaintiff's allegations "generally fall squarely within the category of ordinary tribulations of the workplace experienced by thousands of employees each and every day" and that they are "largely the ordinary activities of a supervisor that are not sufficiently offensive or intimidating to support a hostile work environment claim." Def.'s Mot. Dismiss 18, 21. But

the Court must construe plaintiff's factual allegations in her favor and grant her the benefit of all reasonable inferences that can be derived from the facts alleged. The allegations, when construed in plaintiff's favor, resemble "a pattern or practice of harassment directed at a single employee," *Bundy*, 641 F.2d at 943 n.9, rather than an ordinary workplace with occasional lapses in civility. The amended complaint lists in chronological order each action allegedly taken by Mr. Kanne to humiliate plaintiff and discourage her from taking time off to care for her newborn child, as well as punish her for doing so. *See* Am. Compl. ¶¶ 53–168. Taken together, and assuming their truth, plaintiff's allegations plausibly state a hostile work environment claim for having altered the conditions of her employment and creating an abusive working environment.

Accordingly, the Court **DENIES** defendant's motion to dismiss these Counts pursuant to Rule 12(b)(6).

## Conclusion

The Court **GRANTS** defendant's partial motion to dismiss as to Counts III and IV but **DENIES** it as to the remaining Counts. A separate order follows.

Date: March 31, 2020

Royce C. Lamberth
United States District Judge